UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ELEAZAR MORALES-MARTINEZ, <br><br>      Petitioner, <br> v. <br><br> KEVIN RAYCRAFT, Acting Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, <br><br>      Respondents. <br> _____ / | Case No. 25-cv-13303 <br><br> Hon. F. Kay Behm <br> United States District Judge |

**OPINION AND ORDER GRANTING THE PETITION FOR A WRIT OF HABEAS CORPUS (ECF No. 1)**

## I.    PROCEDURAL HISTORY

On October 19, 2025, Petitioner Eleazar Morales-Martinez, a Mexican citizen, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that he is being unlawfully detained by Respondents at the North Lake Processing Center in Baldwin,

1

Michigan in violation of the Immigration and Nationality Act ("INA")

and the Due Process clause of the Fifth Amendment.  ECF No. 1.

Respondents, who include Secretary of the United States

Department of Homeland Security Kristi Noem, United States Attorney

General Pamela Bondi, Executive Office for Immigration Review, and

Immigration and Customs Enforcement Detroit Field Office Director

Kevin Raycraft, argue that Petitioner's detention is not unlawful under

the INA, specifically 8 U.S.C. § 1225(b)(2), and does not violate his Due

Process rights.  Respondents also urge the Court to refrain from

deciding the merit of the petition until Morales-Martinez

administratively exhausts his claims and to dismiss all Respondents

other than Raycraft.  ECF No. 5.

This case is one of an ever-growing number of challenges in this

District, and across the country, to noncitizen detentions arising out of

decisions by the Department of Homeland Security based upon its

current interpretation of the Immigration and Nationality Act.  Three

judges in this District have joined their peers nationwide to conclude

that the interpretation being advanced by the Government, which

would require the mandatory detention of hundreds of thousands, if not

millions, of individuals currently residing within the United States, is contrary to both the plain text of the statute and the overall statutory scheme.  *See, e.g.*, *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, --- F. Supp. 3d ---, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (McMillion, J.); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025) (White, J.); *Gimenez Gonzalez v. Raycraft*, No. 25-CV-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025) (Kumar, J.).

For the reasons below, this court reaches the same conclusion, finds that oral argument is not necessary to decide the petition pursuant to LR 7.1(f)(2), **GRANTS** the petition for a writ of habeas corpus, and orders that Petitioner receive a bond hearing as provided under 8 U.S.C. § 1226 within seven days of entry of this order, or else be released immediately.

## II.   FACTUAL BACKGROUND

The relevant facts are straightforward.  Petitioner Eleazar Morales-Martinez[1] is a Mexican citizen who has resided in the United

---

[1] Respondent also refers to Petitioner as "Jorge," and spells his last name "Moralez-Martinez," though it is not clear whether either spelling was intentional or whether that was error.  *See* ECF No. 5, PageID.48.

States for several years, until his arrest by ICE on September 11, 2025. ECF No. 1.[2]  He is deaf and requires a sign language interpreter to communicate.  He also has developmental and competency issues.  After his mother died, he left Mexico to come to the U.S. so that his remaining family could care for him.  Petitioner was a passenger in a car that was pulled over in Canton Township by police; he was then referred to DHS.  *See* ECF No. 5-2, PageID.76.  Petitioner is charged with having entered the United States without inspection and lacking valid entry documents.  Morales-Martinez is in the physical custody of Respondents at North Lake Correctional Facility in Baldwin, Michigan.  Respondents have not given Petitioner the opportunity to post bond or be released on other conditions.

## III.  ANALYSIS

Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement."  *Fay v. Noia*, 372 U.S. 391, 400 (1963).  "The application for the writ usurps the attention

---

[2] The facts are taken from Morales-Martinez's Petition, the facts of which are not disputed in the Response.  *See* ECF No. 1.

and displaces the calendar of the judge or justice who entertains it and receives prompt action from [her] within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted). A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241. If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. § 2243.

### A. Petitioner's detention without bond is contrary to the plain language of the Immigration and Nationality Act

Respondent advances two arguments as to Petitioner's detention under the INA: first, that the court should require administrative exhaustion, and second, that Morales-Martinez is properly detained under § 1225(b)(2). The court first addresses the administrative exhaustion issue and then proceeds to the meaning of § 1225(b)(2).

### i.   Administrate Exhaustion

Before determining the merits of this petition, the court must first address Respondents' argument that it should require Petitioner to exhaust his administrative remedies before he is permitted to proceed with his habeas petition.  The court finds that exhaustion is not necessary.

No applicable statute or rule requires administrative exhaustion in this case.  *See Lopez-Campos v. Raycraft*, 2025 WL 2496379, at *4, ___ F. Supp. 3d ___ (E.D. Mich. Aug. 29, 2025).  When Congress has not mandated exhaustion, the decision to require it is within the sound discretion of the court.  *See Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013).  Known as prudential exhaustion, the court-made doctrine "must comport with the statutory scheme and congressional intent."  *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019) and *Shearson*, 725 F.3d at 593-94).

Courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;

(2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and

(3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Lopez-Campos*, 2025 WL 2496379, at *4.

But even if prudential exhaustion would otherwise apply, courts may waive such exhaustion if the "pursuit of administrative remedies would be a futile gesture" or if the petition presents a "legal question . . . fit for resolution and delay means hardship." *Shearson*, 725 F.3d at 594; *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

The court agrees with the majority of district courts in this circuit and around the nation in deciding not to enforce an exhaustion of administrative remedies requirement for these kinds of habeas petitions. *See Casio-Mejia v. Raycraft*, 2025 WL 2976737, at *5 (E.D. Mich. Oct. 21, 2025) (collecting cases).  To start, all three of the factors weigh against imposing prudential exhaustion.  First, the issues raised by the habeas petition are purely legal questions and do not require the agency to develop a record.  *See Contreras-Cervantes v. Raycraft*, 2025

7

WL 2952796, at *5 (E.D. Mich. Oct. 17, 2025).  Further, a bond appeal to the Board of Immigration Appeals ("BIA") is not required for Morales-Martinez's due process claim because the BIA cannot review constitutional challenges.  *See Sterkaj v. Gonzalez*, 439 F.3d 273, 279 (6th Cir. 2006).  Finally, the BIA has conclusively rejected Petitioner's argument, precedentially deciding that a noncitizen who has been present in the United States for a period of years or decades without inspection or authorization is an "applicant for admission" under § 1225(a)(1) and thus subject to mandatory detention during removal proceedings under that section.  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025); *see also Casio-Mejia*, 2025 WL 2976737, at *4 (noting that *Yajure Hurtado* is binding on DHS and immigration courts, but not on United States district courts).  Accordingly, as Respondents admit, "Morales-Martinez is unlikely to obtain the relief he seeks through the administrative process," and any appeal of bond determination to the BIA will not preclude but merely delay the need for judicial review. Because administrative review in this instance would be futile, and because every additional day in unlawful detention presents a hardship for Petitioner, the court declines to impose an exhaustion requirement

upon Morales-Martinez and will address the merits of his petition.  *See*

*Lopez-Campos*, 2025 WL 2496379, at *5.

### i.  Statutory and Regulatory Framework

At issue are the meaning of two related provisions of the

Immigration and Nationality Act: 8 U.S.C. § 1225(b)(2), and 8 U.S.C.

§ 1226(a).  Congress established these two statutes to principally govern

detention of noncitizens pending removal proceedings.  8 U.S.C.

§§ 1225 and 1226.  The first – Section 1225 – is a mandatory detention

provision that states, in relevant part:

> (2) INSPECTION OF OTHER ALIENS
>
>> (A) In general
>>
>> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).

Key to the issues raised here, Section 1225 applies to "applicants

for admission," who are noncitizens "present in the United States who

[have] not been admitted."  8 U.S.C. § 1225(a)(1).  All applicants for

9

admission must undergo screening by an examining immigration officer, and if it is determined that the applicant "seeking admission is not clearly and beyond a doubt entitled to be admitted," they "*shall* be detained for" standard removal proceedings.  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The only exception to this mandatory detention provision is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

The second statutory provision – Section 1226 – provides for a discretionary detention framework. It states, in relevant part:

> (a) **Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
>
>> (1) may continue to detain the arrested alien; and
>>
>> (2) may release the alien on—
>>
>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . .

8 U.S.C. § 1226(a).

Although the language in § 1226(a) is discretionary, there is no dispute that noncitizens arrested and detained under Section 1226(a) have a right to request a custody redetermination (i.e. a bond hearing) before an Immigration Judge.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).  The IJ then evaluates whether there is a risk of nonappearance or danger to the community.  *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006).

Meanwhile, although § 1226 generally provides for a discretionary detention framework, subsection (c) prohibits certain noncitizens who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence in the country without being admitted (like Petitioner) from being released on bond, *but only if* the noncitizen has also been:

> charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E).

For nearly thirty years, Respondents and the federal courts recognized that noncitizens who entered the United States without inspection and were apprehended years later were eligible for a bond

hearing before an immigration judge under 8 U.S.C. § 1226(a), because

they were not deemed "arriving" or "seeking admission," were not

subject to § 1225(b)(2), and were therefore entitled to a custody hearing.

Thus, individuals who previously entered without inspection and are

subsequently placed in removal proceedings receive bond hearings if

ICE chooses to detain them, unless their criminal history renders them

ineligible.

However, on July 8, 2025, Immigration and Customs Enforcement

(ICE), "in coordination with" the Department of Justice, issued "Interim

Guidance Regarding Detention Authority for Applicants for Admission,"

which instructed all ICE employees to consider anyone inadmissible

under § 1182(a)(6)(A)(i)—i.e., those who initially entered the United

States without inspection—to be subject to mandatory detention under

8 U.S.C. § 1225(b)(2), no matter how long they have resided in the

United States.  The Board of Immigration Appeals has now agreed with

that interpretation and, in an opinion binding on immigration courts,

held that § 1225(b)(2)(A) covers inadmissible noncitizens who lived

unlawfully in the United States for longer than two years without

apprehension.  *In the Matter of Yajure Hurtado*, 29 I&N Dec. 216
(2025).

### ii.   Lawfulness of Petitioner's Detention under the INA

The central question to this habeas petition is which detention
framework properly applies to a Mexican citizen who has lived in the
United States for several years, was never lawfully admitted to the
country, was arrested during a traffic stop, and is now facing removal
proceedings.  Respondents say § 1225(b)(2)(A), Morales-Martinez says
§ 1226(a).

Broadly, Respondents' interpretation is that any noncitizen
present unlawfully in the United States is perpetually "seeking
admission" to the United States and is subject to the mandatory
detention statute in § 1225(b)(2).  ECF No. 5, PageID.58.  That
interpretation is inconsistent with ordinary dictionary meaning,
existing precedent, historical practice, and the structure and text of the
INA.  To start, the Supreme Court has described the structure of these
provisions of the INA as accomplishing two different goals.  Section
1225 is "framed [] as a part of the process that 'generally begins at the

Nation's borders and ports of entry, where the Government must determine whether [noncitizens] seeking to enter the country are admissible.'" *Rosado v. Figueroa, et al.*, No. 2:25-cv-02157, 2025 WL 2337099, at *8 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018)); *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *7 (E.D. Mich. Aug. 29, 2025).  Section 1226(a), on the other hand, applies to the process of "arresting and detaining" noncitizens who are already living "inside the United States" but still subject to removal (like Petitioner).  *Jennings*, 583 U.S. at 288.  Put simply, Section 1225 applies to noncitizens "arriving to the country" and Section 1226 governs detention of noncitizens "already in the country."  *Id.* Although other courts have ably delved into the subject in more detail, both the legislative history and decades of consistent agency practice support this reading of the statute.  *See, e.g.*, *Pizarro Reyes*, 2025 WL 2609425, at *7.

The parties here focus their inquiry on statutory interpretation. When interpreting a statute, "the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'"  *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v.*

14

*Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)); *see also King v. Burwell*, 576 U.S. 473, 486 (2015).  But often "the 'meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.'"  *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)).  It is the court's role, regardless of an agency's guidance or interpretation, to "use every tool at their disposal to determine the best reading of the statute and resolve [any] ambiguity."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 373 (2024).

Section 1225(b)(2)(A) says that when dealing with "inspection and removal of arriving aliens," immigration officials "shall" detain "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A).  Respondents argue that their novel enforcement of § 1225(b)(2) is permissible because the term "applicant for admission" is defined as any noncitizen "present in the United States who has not been admitted," and therefore it applies to anyone here unlawfully, even if they are already physically present.  ECF No. 5, PageID.55 (citing 8 U.S.C. § 1225(a)(1).

15

According to Respondents, "all unadmitted noncitizens present in the United States are 'applicants for admission,' regardless of their proximity to the border, the length of time they have been present in the United States, or whether they ever had the subjective intent to properly apply for admission."  ECF No. 5, PageID.55.

This interpretation does not accord with the structure or text of the statute.  The plain text of § 1225(a)(1) states that detention "shall" occur only for those "seeking admission" to the United States.  Fellow district courts have had no difficulty pointing out that term qualifies the broader term of "applicant for admission" (even assuming that term can be read as broadly as Respondent does), and any plain reading of the statute must give meaning to that term.  *See Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) ("seeking admission" means "action – something that is currently occurring, and in this instance, would most logically occur at the border upon inspection.  Noncitizens who are just 'present' in the country – . . . and never proceeded to obtain any form of citizenship (*e.g.* asylum, permanent residency, refugee status, visas, etc.) – are not 'seeking' admission."); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025

16

WL 2609425, at *6 (E.D. Mich. Sept. 9, 2025) ("The Court, . . . finds it difficult to square a noncitizen's continued presence with the term 'seeking admission,' when that noncitizen never attempted to obtain lawful status."); *Gimenez Gonzalez*, 2025 WL 3006185 at *4 (E.D. Mich. Oct. 27, 2025) (a "multitude of district courts" has "explained that § 1225(b)(2) applies to arriving aliens undergoing inspection, which generally occurs at the United States' border or ports of entry").  "It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).  In short, the statute's references to noncitizens "seeking admission" places temporal limits on its reach, and a broad consensus of district courts have agreed that "§ 1225 clearly establishes an inspection scheme for when to let noncitizens into the country" and "governs the *entrance* of noncitizens to the United States," but no more. *E.g.*, *Pizarro Reyes*, 2025 WL 2609425, at *5; *Barrera v. Tindall*, No. 25-541, 2025 U.S. Dist. LEXIS 184356, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (holding the text of § 1225 is focused "on inspections

for noncitizens when they arrive" and "suggest[s] [it] is limited to noncitizens arriving at a border or port and are presently 'seeking admission' into the United States.").

Recent amendments to the INA support this reading.  Congress amended § 1226 this year via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).  Specifically, it added subsection § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Petitioner), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E)(i)–(ii).  In short, although § 1226 generally creates a discretionary detention framework, the amendment to that provision nonetheless *mandates* detention for noncitizens (like Petitioner) who are present in the United States without being admitted or without proper documentation ***and*** (unlike Petitioner) have been arrested for, charged with, or convicted of certain crimes.  *Lopez-Campos*, 2025 WL 2496379, at *8 (E.D. Mich. Aug. 29, 2025).  This recently created statutory exception would be largely redundant if § 1225(b)(2) authorized his detention as well.

18

*Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025).  As several courts have explained, "[s]uch an interpretation would largely nullify a statute Congress enacted this very year," and must therefore be rejected.  *Gomes*, 2025 WL 1869299, at *7; *e.g. Pizarro Reyes*, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025).  Respondents' argument that there is redundancy simply built into the statute (ECF No. 5, PageID.64) does not meaningfully respond specifically to the carve-out under § 1226(c)(1)(E), and is for that reason unconvincing.  If Respondents' interpretation of § 1225(b)(2) were correct, that "would render the Laken Riley Act a meaningless amendment, since it would have prescribed mandatory detention for noncitizens already subject to it." *Cordero Pelico v. Kaiser*, 2025 WL 2822876, *12 (N.D. Cal., Oct. 3, 2025).  The mere fact that *Petitioner* cannot be detained under the Laken Riley Act does not alter the fact that Respondents' reading is simply not the "best reading" of the statute and structure of the statute as a whole.  *Loper Bright*, 603 U.S. at 373, 400 ("instead of declaring a particular party's reading 'permissible' . . . , courts use every tool at their disposal to determine the best reading of the statute").

Meanwhile, neither DHS's "Guidance" applying § 1225(b)(2) to noncitizens already present in the United States, nor the BIA's decision in *Yajure Hurtado*, are entitled to any deference by this court. *See Loper Bright*, 603 U.S. at 413 ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."); *Pizarro Reyes*, 2025 WL 2609425, at *6; *see also Casio-Mejia*, 2025 WL 2976737, at *4 (noting that *Yajure Hurtado* is binding on DHS and immigration courts, but not on district courts). Both the Guidance and the BIA's reasoning are unpersuasive and at odds with the nearly unanimous conclusions of the district courts.

Finally, as previously referenced, the court is persuaded by the near-unanimity of authority on the issues presented. Respondent, via attorney Zak Toomey, has made arguments that have been soundly rejected in, as far as the citations provided by Petitioner indicate, very nearly every district court that has heard them. *See, e.g.*, *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, --- F. Supp. 3d ---, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (McMillion, J.); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025)

(White, J.); *Gimenez Gonzalez v. Raycraft*, No. 25-CV-13094, 2025 WL 3006185 (E.D. Mich. Oct. 27, 2025) (Kumar, J.); *Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. 25-CV-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Dos Santos v. Noem*, No. 25-CV-12052, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, --- F. Supp. 3d ---, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 25-CV-01789, 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 Civ. 6373, 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 25-CV-02428, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 25-CV-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F. Supp. 3d ---, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Diaz Diaz v. Mattivelo*, No. 25-CV-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); *Francisco T. v. Bondi*, --- F.

Supp. 3d ---, 2025 WL 2629839 (D. Minn. Aug. 29, 2025); *Garcia v.*
*Noem*, No. 25-CV-02180, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025);
*Hernandez Nieves v. Kaiser*, No. 25-CV-06921, 2025 WL 2533110 (N.D.
Cal., Sept. 3, 2025); *Doe v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2576819
(D. Mass. Sept. 5, 2025); *Jimenez v. FCI Berlin, Warden*, --- F. Supp. 3d
---, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Mosqueda v. Noem*, No.
25-CV-02304, 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Hinestroza v.*
*Kaiser*, No. 25-CV-07559, 2025 WL 2606983 (N.D. Cal. Sept. 9, 2025);
*Sampiao v. Hyde*, --- F. Supp. 3d ---, 2025 WL 2607924 (D. Mass. Sept.
9, 2025); *Guzman v. Andrews*, No. 25-CV-01015, 2025 WL 2617256
(E.D. Cal. Sept. 9, 2025); *Lopez Santos v. Noem*, No. 25-CV-01193, 2025
WL 2642278 (W.D. La. Sept. 11, 2025); *Salcedo Aceros v. Kaiser*, No. 25-
CV-5624, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Garcia Cortes, v.*
*Noem*, No. 25-CV-02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025);
*Pablo Sequen v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2650637 (N.D. Cal.
Sept. 16, 2025); *Maldonado Vazquez v. Feeley*, No. 25-CV-01542, 2025
WL 2676082 (D. Nev. Sept. 17, 2025); *Velasquez Salazar v. Dedos*, No.
25-CV-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Hasan v.*
*Crawford*, --- F. Supp. 3d ---, 2025 WL 2682255 (E.D. Va. Sept. 19,

2025); *Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); *Beltran Barrera v. Tindall*, No. 25-CV-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Chogllo Chafla v. Scott*, No. 25-CV-00437, 2025 WL 2688541 (D. Me. Sept. 21, 2025); *Singh v. Lewis*, No. 25-CV-96, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025); *Giron Reyes v. Lyons*, --- F. Supp. 3d ---, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Brito Barrajas v. Noem*, No. 25-CV-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ---, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Lopez v. Hardin*, No. 25-CV-830, 2025 WL 2732717 (M.D. Fla. Sept. 25, 2025); *Roa v. Albarran*, No. 25-CV-07802, 2025 WL 2732923 (N.D. Cal. Sept. 25, 2025); *Rivera Zumba v. Bondi*, No. 25-CV-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025); *Valencia Zapata v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Alves da Silva v. U.S. Immigr. & Customs Enf't*, No. 25-CV-284, 2025 WL 2778083 (D.N.H. Sept. 29, 2025); *Chang Barrios v. Shepley*, No. 25-CV-00406, 2025 WL 2772579 (D. Me. Sept. 29, 2025); *Inlago Tocagon v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2778023 (D. Mass. Sept. 29, 2025); *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025); *Romero-Nolasco v. McDonald*, --

- F. Supp. 3d ---, 2025 WL 2778036 (D. Mass. Sept. 29, 2025); *Quispe v. Crawford*, No. 25-CV-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025); *Chiliquinga Yumbillo v. Stamper*, No. 25-CV-00479, 2025 WL 2783642 (D. Me. Sept. 30, 2025); *Quispe-Ardiles v. Noem*, No. 25-CV-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); *Rodriguez v. Bostock*, --- F. Supp. 3d ---, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025); *D.S. v. Bondi*, No. 25-CV-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Ayala Casun v. Hyde*, No. 25-CV-427, 2025 WL 2806769 (D.R.I. Oct. 2, 2025); *Chanaguano Caiza v. Scott*, No. 25-CV-00500, 2025 WL 2806416 (D. Me. Oct. 2, 2025); *Guzman Alfaro v. Wamsley*, No. 25-CV-01706, 2025 WL 2822113 (W.D. Wash. Oct. 2, 2025); *Rocha v. Hyde*, No. 25-CV-12584, 2025 WL 2807692 (D. Mass. Oct. 2, 2025); *Alvarenga Matute v. Wofford*, No. 25-CV-01206, 2025 WL 2817795 (E.D. Cal. Oct. 3, 2025); *Escobar v. Hyde*, No. 25-CV-12620, 2025 WL 2823324 (D. Mass. Oct. 3, 2025); *Cordero Pelico v. Kaiser*, No. 25-CV-07286, 2025 WL 2822876 (N.D. Cal. Oct. 3, 2025); *Echevarria v. Bondi*, No. 25-CV-03252, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, --- F. Supp. 3d ---, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Artiga v. Genalo*, No. 25-CV-5208, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025); *Hyppolite v.*

*Noem*, No. 25-CV-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).[3]
This court agrees with the overwhelming majority viewpoint.

Therefore, Section 1226(a) is the appropriate statutory framework
for determining bond for noncitizens who are already in the country and
facing removal.  Morales-Martinez has resided in the United States for
several years and was apprehended in a traffic stop, not upon arrival at
the border or a port of entry.  Under § 1226(a), Petitioner is entitled to a
discretionary bond determination hearing.  *See* 8 C.F.R. §§ 1236.1(c)(8),
(d)(1).  Because Morales-Martinez has been detained without having
received such a hearing, he is in federal custody in violation of federal
law.  His habeas petition will thus be granted, and Respondent Raycraft
will be directed to provide Morales-Martinez with a bond hearing
under § 1226(a) or otherwise release him.

---

[3] The court has identified only two outliers.  *See Chavez v. Noem*, 2025 WL
2730228, ___ F. Supp. 3d ___ (S.D. Cal. Sep. 24, 2025) (adopting *Yajure Hurtado*'s
statutory interpretation to find § 1225(b)(2) applicable to noncitizens long present in
the United States); *Vargas Lopez v. Trump*, 2025 WL 2780351 (D. Neb. Sep. 20,
2025) (concluding that noncitizens may be subject to both § 1225(b)(2) and § 1226(a)
and that DHS may choose which statute to rely upon in detaining a noncitizen
subject to removal).

### B.    Due Process

The court declines to decide the merits of Morales-Martinez' due process claim, given that the court herein grants the relief he seeks based on its interpretation of the applicability of § 1226(a).  If Respondents do not provide Petitioner with a bond redetermination hearing or release him within the time ordered, Petitioner may renew his Fifth Amendment Due Process claim.

## IV.    CONCLUSION

Therefore, the Court **GRANTS** the petition for writ of habeas corpus (ECF No. 1).  It is therefore **ORDERED** that:

1. Respondent Raycraft shall provide Morales-Martinez with a bond hearing under § 1226(a) on or before **November 13, 2025**, or otherwise release him; and

2. Respondent Raycraft shall file a status report to certify compliance with this order on or before **November 17, 2025**.  The status report shall detail when Morales-Martinez was released or when his bond hearing occurred, if bond was granted or denied, and—if bond was denied—the reasons for the denial.

Because Petitioner does not oppose the dismissal of all Respondents except for the ICE Field Office Director, ECF No. 6,

PageID.100, it is **FURTHER ORDERED** that all Respondents except

for Acting ICE Field Office Director Kevin Raycraft are **DISMISSED**

without prejudice.

The court retains jurisdiction to enforce the terms of this order.

**SO ORDERED**.


Date: November 7, 2025                    <u>s/F. Kay Behm</u>
                                          F. Kay Behm
                                          United States District Judge